IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------X
C.H. ROBINSON COMPANY, INC.

       Plaintiff,

   - against –

MSC MEDITERRANEAN SHIPPING COMPANY
S.A.; GREENWICH TERMINALS LLC;
GLOUCESTER TERMINALS LLC and HOLT
LOGISTICS CORP.

       Defendant.
---------------------------------------------------------------X

C.A. #

**COMPLAINT**

Plaintiff, C. H. ROBINSON COMPANY, INC. by and through its attorneys, Mattioni Ltd. and Casey & Barnett LLC, as and for its Complaint, alleges upon information and belief as follows:

**JURISDICTION**

1.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333 and the provisions contained in the MSC bill of lading, which provides for jurisdiction in this District for cargo shipments that transit through the United States. Jurisdiction is also predicated upon 28 U.S.C. § 1367.

**PARTIES**

2.  At all material times, C. H. Robison Company, Inc. (hereinafter "CHR" or "Plaintiff") was and is a corporation with an office and place of business located at 14701

{}

Charlson Road, Eden Prairie, MN 55347, and was the owner and consignee of five consignments of Fresh Grapes, as more specifically described below.

3. At all material times, defendant, MSC MEDITERRANEAN SHIPPING COMPANY S.A. (hereinafter "MSC" or "Defendant") was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located at 700 Watermark Blvd, Mt. Pleasant, SC 29464, and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a common carrier of goods for hire.

4. At all material times, defendant GREENWICH TERMINALS LLC (hereinafter "Greenwich" or "Terminal Defendant") is a business entity duly organized and existing under the law with an office and place of business located at 3301 South Christopher Columbus Boulevard, Philadelphia, PA 19148 and at all material times was acting as a marine terminal handling, *inter alia*, container loads of import cargo, including fresh fruit requiring fumigation services.

5. At all material times, defendant GLOUCESTER TERMINALS LLC (hereinafter "Gloucester" or "Terminal Defendant") is a business entity duly organized and existing under the law with an office and place of business located at King & Essex Streets, Gloucester City, New Jersey 08030 and at all material times was acting as a marine terminal handling *inter alia*, container loads of import cargo, including fresh fruit requiring fumigation service.

6. At all material times, defendant HOLT LOGISTICS CORP (hereinafter "Holt" or "Terminal Defendant") is a business entity duly organized and existing under the law with an office and place of business located at 101 S. King Street, Gloucester City, New Jersey 08030, and at all material times was acting as a marine terminal handling, *inter alia*, container loads of

import cargo, including fresh fruit requiring fumigation services. Upon information and belief, Holt Terminal controls and or operates both Gloucester and Greenwich Terminals.

7. Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

## RELEVANT FACTS

8. In or about March 2022 cargo shipper Robinson Fresh Chile S.A. booked for transit with defendant MSC five container loads of Fresh Grapes for transit from Chile to Philadelphia, Pennsylvania, all as per booking Reference 070ISA1008692.

9. On or about March 21, 2022, a consignment consisting of 2,280 Cases Fresh Grapes, laden in refrigerated container MSDU 9848477, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile by cargo shipper Robinson Fresh Chile, S.A. The cargo was booked for transit on board the M/V MSC VITA in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2363254 dated March 23, 2022.

10. On or about March 21, 2022, a consignment consisting of 2,280 Cases Fresh Grapes, laden in refrigerated container MEDU 9895932, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile by cargo shipper Robinson Fresh Chile, S.A. The cargo was booked for transit on board the M/V MSC VITA in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2363254 dated March 23, 2022.

11. On or about March 21, 2022, a consignment consisting of 2,280 Cases Fresh Grapes, laden in refrigerated container OTPU 6097080, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile by cargo shipper Robinson Fresh Chile, S.A. The cargo was booked for transit on board the M/V MSC VITA in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2363254 dated March 23, 2022.

12. On or about March 21, 2022, a consignment consisting of 2,280 Cases Fresh Grapes, laden in refrigerated container MEDU 9345243, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile by cargo shipper Robinson Fresh Chile, S.A. The cargo was booked for transit on board the M/V MSC VITA in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2363254 dated March 23, 2022.

13. On or about March 21, 2022, a consignment consisting of 2,280 Cases Fresh Grapes, laden in refrigerated container CHIU 9053712, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile by cargo shipper Robinson Fresh Chile, S.A. The cargo was booked for transit on board the M/V MSC VITA in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2363254 dated March 23, 2022.

14. Grapes are a perishable commodity and are required to be maintained at proper conditions of temperature and atmosphere. The grapes also need to be fumigated prior to

delivery into the United States and the temperature of the cargo must be raised at the proper time prior to fumigation in order to provide for the fumigation.

15. The grapes cannot be released for entry into the United States to the cargo receiver until fumigation is completed and the cargo is released by the USDA.

16. The five containers were loaded on board the M/V MSC VITA on or about March 21, 2022, MSC bill of lading MEDUD2363254 was issued and the vessel sailed for her intended destination.

17. The containers were transshipped in Colon, Panama and loaded on board the M/V HARMONY III for continued transit to Philadelphia.

18. The original estimated date of arrival in Philadelphia was on or about April 6, 2022.

19. MSC issued an Arrival Notice to plaintiff on April 1, 2022. The Arrival Notice reiterates the anticipated arrival date of April 6, 2022.

20. MSC raised the delivery air temperature in four of the five subject containers in advance of expected fumigation at the port of discharge as follows: MEDU 9345243 – March 30, 2022; MEDU 9898932 – March 21, 2022; MSDU 9848477 – April 7, 2022; and OTPU 6097080 – March 30, 2022. MSC did not raise the delivery air temperature for container CHIU 90553712.

21. The MSC HARMONY III arrived in Philadelphia on April 16, 2022, and, upon information and belief, the containers were discharged at the Packer Avenue Marine Terminal in Philadelphia. The Packer Avenue Marine Terminal is operated by Greenwich Terminals LLC and /or Holt Logistics Corp.

22. Greenwich Terminals and/or Holt Logistics had possession, custody and control of the five containers after discharge from the M/V MSC HARMONY III and they failed to

timely and promptly conduct fumigation services on the CH Robinson containers, particularly given that the delivery air temperatures had been raised for the purpose of fumigation services prior to discharge.

23. MSC, Greenwich Terminals and Holt Logistics had solicited exporters, importers and shippers of grapes from Chile, including Plaintiff, to utilize their vessels and /or marine terminals for the importation of the grapes into the United States, making certain representations as to their abilities to properly and timely handle or perform the requirements for the importation, including the adequacy of their Vessels and routes, and facilities to provide for the timely transportation, handling, fumigation and delivery of the cargo to the consignees.

24. The five containers remained at the Packer Avenue Terminal until on or about April 26, 2022 waiting for fumigation to occur.

25. On or about April 26, 2022 the five containers were moved from Packer Avenue Marine Terminal to Gloucester Marine Terminal, also operated by Holt Logistics for handling, storage, fumigation and delivery.

26. Greenwich Terminals, Gloucester Terminals and Holt Logistics arranged for and/or performed transportation of the cargo between the discharge terminal, the fumigation facilities, and/or the places where the cargo was stored prior to delivery to the Plaintiff.

27. Greenwich Terminals, Gloucester Terminals and Holt Logistics owned and/or operated the facilities at which the cargo was discharged and/or fumigated after discharge from the ocean vessel and before delivery of the cargo to the Plaintiff.

28. Greenwich Terminals, Gloucester Terminals, Holt Logistics and /or MSC arranged for and/or coordinated and/or performed the fumigation of the cargo, including the

scheduling of the fumigation and the delivery, staging and handling and fumigation of the cargo, and thereafter delivery to the Plaintiff.

29. For the subject shipment, MSC and its subcontractors, including the marine terminals in the port of Philadelphia, were given instructions, and/or knew or should have known, as to the proper care of the subject cargo, including the appropriate conditions of temperature and atmosphere at which the cargo was to be maintained during transportation and after discharge prior to and during fumigation.

30. Due to the perishable nature of the cargo of grapes, MSC and its subcontractors, including the marine terminals in the port of Philadelphia, were obligated to promptly provide ocean transportation and perform, or provide for the performance of, timely and proper fumigation of the cargo prior to the delivery of the cargo to the Plaintiff.

31. MSC was obligated to properly plan the voyages and cargoes on board its vessels and to give timely and proper notice to its subcontracting marine terminal partners of the anticipated cargo shipments, so that all could perform the prompt fumigation and delivery of the cargoes after discharge from the ocean vessel.

32. MSC was obligated to arrange for and have in place adequate port facilities and cargo storage, handling and fumigation facilities to arrange and provide for the prompt delivery of the cargo to the consignees without delay.

33. MSC and the Terminal Defendants failed to properly plan for and to have in place adequate facilities to provide for the prompt fumigation of the cargo and/or failed to schedule the shipments and cargo so as to provide for prompt fumigation and delivery of the cargo to the Plaintiff and/or failed to advise, inform or warn the shippers of foreseeable limitations on their

abilities to provide adequate fumigation facilities and/or their inability to promptly provide for and /or perform prompt fumigation and delivery of the cargo to the Plaintiff.

34. MSC and the Terminal Defendants failed to have in place adequate procedures and fumigation facilities to provide for the prompt fumigation of the cargo.

35. The failure of MSC and the Terminal Defendants to properly maintain and timely adjust the temperature of the cargo prior to fumigation caused the perishable cargo to sustain damage and the Plaintiffs to sustain losses as a result thereof.

36. MSC and the Terminal Defendants failed to establish, observe and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storage and delivering the cargo, as required by 46 U.S.C.S. § 41102(c) and violated the requirements of 46 C.F.R. § 545.4(d).

37. MSC and the Terminal Defendants knew and were aware of the Plaintiff's need for the proper and timely fumigation and delivery of the cargo and failed to exercise due and proper care in performing these services.

38. As a result of the foregoing, the five consignments of Fresh Grapes were not in the same good order and condition as when first received by defendant, but instead had suffered physical damage while in said defendant's care, custody and control.

39. The damage to the cargo was not the result of any act or omission of the plaintiff but, to the contrary, was due solely as the result of the negligence, fault, neglect, breach of contract of carriage, and bailment on the part of the defendant and/or its agents.

40. As a result of the foregoing, Plaintiff suffered incurred expenses and reduced sales on each of the five consignments as follows:

MSDU 9848477     $45,985.05

| | |
|---|---|
| MEDU 9898932 | $48,619.70 |
| OTPU 6097080 | $14,830.02 |
| MEDU 9345243 | $39,788.10 |
| CHIU 9053712 | $33,394.58 |

41. By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $182,617.45.

## AS AND FOR A FIRST CAUSE OF ACTION – MSC

42. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 41, inclusive, as if herein set forth at length.

43. Pursuant to the contract of carriage entered into by and between the parties, the Defendant owed contractual and statutory duties to the aforementioned cargo owner to carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

44. The Defendant breached its contractual and statutory duties by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

45. As a direct and proximate result of said breach of contract by Defendant, the Plaintiff has suffered damages presently estimated to be no less than $182,617.45.

46. By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $182,617.45.

## AS AND FOR A SECOND CAUSE OF ACTION – <u>TERMINAL DEFENDANTS</u>

47. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 41, inclusive, as if herein set forth at length.

48. Greenwich, Gloucester and Holt were marine terminal operators, warehousemen and bailees for hire of the aforementioned cargo.

49. The cargo was in good order and condition when delivered into the custody and control of the Terminal Defendants but was not in the same good order and condition when delivered by the Terminal Defendants to the Plaintiff.

50. Terminal Defendants agreed and were required, but failed to, take good and proper care of Plaintiff's cargo while in their possession and control, to promptly arrange for and transport the cargo to fumigation facilities, to handle, stage and deliver the cargo for and after fumigation, to provide timely fumigation services, to provide adequate fumigation facilities to maintain the cargo at the proper temperature and atmospheric conditions, and to redeliver the goods to Plaintiff in a prompt manner upon demand.

51. Plaintiff relied on the Terminal Defendants' agreements, representations and warranties in having their cargo delivered to the Port of Philadelphia and to Terminal Defendants for storage, handling and fumigation.

52. Terminal Defendants breached their obligations as marine terminal operators, warehousemen and bailees for hire and are liable for the damages sustained to Plaintiff's cargo.

53. Said failures by Terminal Defendants caused Plaintiff to sustain damages in the amount of $182,617.45.

### AS AND FOR A THIRD CAUSE OF ACTION –
### <u>TERMINAL DEFENDANTS</u>

54. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 41, inclusive, as if herein set forth at length.

55. The loss of or damage to Plaintiff's cargo was caused by the negligence, carelessness and recklessness of the Terminal Defendants through their servants, agents, workmen and /or employees.

56. By reason of the negligence, carelessness and recklessness of the Terminal Defendants, Plaintiff has sustained damages in the amount of $182.617.45.

### AS AND FOR A FOURTH CAUSE OF ACTION –
### <u>TERMINAL DEFENDANTS</u>

57. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 41, inclusive, as if herein set forth at length.

58. The loss or damage to Plaintiff's cargo was caused by the breach of contract of handling, transportation, storage and fumigation on the part of the Terminal Defendants through their servants, agents, workmen and/or employees.

59. By reason of the breach of contract as aforesaid, Plaintiff has sustained damages in the amount of $182.617.45.

### AS AND FOR A FIFTH CAUSE OF ACTION –
### <u>TERMINAL DEFENDANTS</u>

60. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 41, inclusive, as if herein set forth at length.

61. The loss of or damage to Plaintiff's cargo was caused by the breach of the Terminal Defendant's obligations as logistics brokers and service providers.

62. By reason of the aforesaid breaches, Plaintiff has sustained damages in the amount of $182,617.45.

### AS AND FOR A SIXTH CAUSE OF ACTION – <u>TERMINAL DEFENDANTS</u>

63. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 41, inclusive, as if herein set forth at length.

64. The loss of or damage to Plaintiff's cargo was caused by the breach of the Terminal Defendants' warranty of workmanlike performance.

65. By reason of the aforesaid breaches, Plaintiff has sustained damages in the amount of $182,617.45.

**WHEREFORE,** Plaintiff prays:

1. That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2. That judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages in the amount of at least $182,617.45 plus interest and costs; and

3. That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: April 11, 2023
       731-01

                    **MATTIONI, LTD.**
                    Attorneys for Plaintiff

By:   __/s/ Stephen J. Galati_____
          Stephen J. Galati
          Federal Reserve Bank Building
          100 N. Independence Mall West, Suite 5A NW
          Philadelphia, PA 19106
          sgalati@mattioni.com
          Tel: 215-629-1600
          Fax: 215-923-2227

Of Counsel:
Martin F Casey
Casey & Barnett LLC
305 Broadway, Ste 1202,
New York, NY 10007
Tel: 212-286-0225
Email: mfc@caseybarnett.com