IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **C.H. ROBINSON COMPANY, INC.** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **MSC MEDITERRANEAN SHIPPING** | : | NO. 2:23-cv-01384-MRP |
| **COMPANY, S.A., et al.** | : | |
| | : | |
| Defendants. | : | |

Perez, J.                                                                                                                  March 29, 2024

**MEMORANDUM**

**I.      INTRODUCTION**

This is one of five nearly identical lawsuits brought by shippers of Chilean grapes seeking to recover for damages to various shipments of grapes. The shippers bring this suit and three others[1] against the ocean carrier and port terminals who were responsible for transporting, holding, storing, fumigating, and/or delivering the shipments. The fifth lawsuit was filed against only ocean carriers.[2] In response to the Amended Complaint, the port terminals filed nearly identical Motions to Dismiss. Because this Court will transfer this case pursuant to the foregoing analysis, it is unnecessary to address the merits of the Motion to Dismiss, which did not address venue.

---

[1] *Frutera Agrosan Export SPA v. MSC Mediterranean Shipping Co. S.A.*, No. 2:23-cv-00885-MRP; *Dole Chile, S.A. v. MSC Mediterranean Shipping Co., S.A.*, No. 2:23-cv-01504-MRP; *C.H. Robinson Co., Inc. v. MSC Mediterranean Shipping Co., S.A.*, No. 2:23-cv-01748-MRP.
[2] *Arcotrading, LTDA v. MSC Mediterranean Shipping Co., S.A.*, No. 2:23-cv-01218-MRP.

## II.     BACKGROUND

Plaintiff C.H. Robinson Company, Inc.[3] filed this case on April 12, 2023 against Defendants MSC Mediterranean Shipping Company, S.A. ("Carrier Defendant")[4] and Greenwich Terminals LLC, Gloucester Terminals LLC, and Holt Logistics Corp. (collectively, the "Terminal Defendants").[5] The Carrier Defendant is an ocean carrier who was responsible for transporting the shipments from Chile to Philadelphia, Pennsylvania. Amend. Compl. ¶ 8. The Terminal Defendants were "marine terminal operators, warehousemen, and bailees for hire" who had possession and control of the grapes after discharge. *Id.* ¶¶ 24, 49.

Plaintiff and the Carrier Defendant entered into a contractual agreement, known as a bills of lading or sea waybill, that covered the transport of the shipments. ECF No. 15-1 (hereinafter, "Bills of Lading"). The bills of lading contained a forum selection clause that provided:

> Jurisdiction - It is hereby specifically agreed that any suit by the Merchant, and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage contracted for hereunder was to or from the United States of America, in which case suit **shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply.** The Merchant agrees that it shall not institute suit in any other court and agrees to be responsible for the reasonable legal expenses and costs of the Carrier in removing a suit filed in another forum. . . .

Bills of Lading, Section 10.3 (emphasis added).

Plaintiff alleges that the Carrier and Terminal Defendants "knew and were aware of the Plaintiff's need for the proper and timely fumigation and delivery of the cargo and failed to

---

[3] Plaintiff is a corporation with a principal place of business in Eden Prairie, Minnesota. Amend. Compl. ¶ 1.
[4] The Carrier Defendant is a corporation with a principal place of business in Mt. Pleasant, South Carolina. *Id.* ¶ 3.
[5] The Terminal Defendants are business entities with principal places of business in Philadelphia, Pennsylvania and Gloucester City, New Jersey. *Id.* ¶¶ 27-21.

exercise due and proper care in performing these services." Amend. Compl. ¶ 38. As a result, the perishable grapes were damaged, and Plaintiff suffered loss. *Id.* ¶¶ 39, 41-42.

## III. DISCUSSION

Under 28 U.S.C. §§ 1404(a) and 1406(a), district courts have broad discretion to direct the *sua sponte* transfer of a civil action to a different venue. *See also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3rd Cir. 2020); *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001) ("We acknowledge that, as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss."). Accordingly, this Court will assess *sua sponte* whether, in light of the forum selection clause, this case should be transferred to the Southern District of New York.

### A. The Forum Selection Clause is Enforceable

First, we assess whether the forum selection clause is valid and enforceable. "Forum selection clauses are presumptively valid and should be enforced unless they are unreasonable under the circumstances. *Kilduff v. Jayco, Inc.*, No. 5:23-cv-00470, 2023 WL 3361187 at *3 (E.D. Pa. May 10, 2023). A forum selection clause is unreasonable if "(1) it is the result of fraud or overreaching; (2) . . . enforcement would violate strong public policy of the forum; or (3) . . . enforcement would result in jurisdiction so seriously inconvenient as to be unreasonable." *Id.* (quoting *Polytek Dev. Corp. v. 'Doc' Johnson Enters.*, 532 F. Supp. 3d 243, 248 (E.D. Pa. 2021)). "[M]ere inconvenience and additional expense" are insufficient to demonstrate the third factor. *Id.*

None of the criteria necessary to invalidate the forum selection clause are present here. There is no indication of fraud or overreach, and enforcement in the Southern District of New York would not be so seriously inconvenient as to be unreasonable. With respect to convenience, New York and Philadelphia are similarly situated. The Plaintiff resides in Minnesota, the Carrier

Defendant resides in South Carolina, the Terminal Defendants reside in Pennsylvania and New Jersey. Amend. Compl. ¶¶ 2-6. Therefore, New York is not "so seriously inconvenient as to be unreasonable." In addition, "it would be consistent with the public policy of Pennsylvania to enforce the forum selection clause in order to give force to the parties' agreement." *Kilduff*, 2023 WL 3361187 at *3 (quoting *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 247 (E.D. Pa. 2007)). This Court will therefore proceed with the transfer analysis.

### B. Transfer Standard

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). A court contemplating a transfer typically conducts a balancing test, weighing "the private and public interests protected by the language of § 1404(a)." *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, No. 21-4664, 2021 WL 5987318 at *3 (E.D. Pa. Dec. 17, 2021) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

Private interests to consider include: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. Public interests to consider include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty . . . resulting from court congestion; the local interest in deciding local controversies at home; the public policies of

the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80.

The presence of a mandatory forum selection clause, however, shifts the analysis. A forum selection clause is considered mandatory when it "contains exclusive or obligatory language." *Maguire*, 2021 WL 5987318 at *4; *see, e.g., Mato v. Window World, Inc.,* No. CIV.A. 10-7617, 2011 WL 710473, at *4 (E.D. Pa. Feb. 28, 2011) (finding that a forum-selection clause stating that a court "shall have jurisdiction" was mandatory). When a mandatory forum selection clause is at play, only the public interests are considered. *Id.* at *4-5. Contrarily, "[w]here the contract containing the mandatory forum-selection clause was not signed by all defendants, . . . the private and public interests of the non-signatory parties must be considered as in a traditional § 1404(a) analysis." *Id.* at *5. Thus, "if the forum-selection analysis (applied to signatory parties) and the traditional § 1404(a) analysis (applied to non-signatory parties) 'point to the same forum, the court should allow the case to proceed in that forum . . . and the transfer inquiry ends there.'" *Id.* (quoting *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017)).

C.  **Transfer Analysis**

The bills of lading's forum selection clause unambiguously states that if "the carriage contracted for hereunder was to or from the United States of America, . . . suit **shall** be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply." Bills of Lading, Section 10.3 (emphasis added). On its face, the clause mandates that lawsuits involving journeys to and from the United States be filed in the Southern District of New York. The clause is therefore mandatory in nature.

The transfer analysis for the Carrier Defendant, as a signatory to the bills of lading, requires only consideration of the public interests. Typically, "a controlling forum selection clause is

enforced in all but the most 'unusual cases' where public interest factors have particularly significant weight." *Maguire*, 2021 WL 5987318 at *7. This case is far from unusual. There is no indication that the enforceability of a judgment would be more difficult if the cases were transferred to the bargained-for jurisdiction. There is likewise no suggestion that transferring the cases would lead to any administrative difficulties. The alleged culpable conduct occurred in Philadelphia and New Jersey, and only one of the Terminal Defendants is a Pennsylvania resident. Amend. Compl. ¶¶ 4, 20-23. In fact, the Carrier Defendant is a South Carolina resident, and the Plaintiff is a resident of Minnesota. *Id.* ¶¶ 1, 17. Because the public interest factors are neutral, transfer of the claim against the Carrier Defendant is proper under Section 1404(a).

The same public interest considerations apply to the analysis for the Terminal Defendants. However, the Terminal Defendants' non-signatory status require us to consider the private interests as well. The forum selection clause indicates that the Southern District of New York is Plaintiff's choice of forum, but Plaintiff filed this action in the Eastern District of Pennsylvania. This discrepancy suggests the first factor, the plaintiff's choice of forum, is neutral. In their respective Answer and Motion to Dismiss, neither the Carrier Defendant nor the Terminal Defendants challenged venue. Thus, the second factor, the defendant's choice of forum, is also neutral. Because the claims arose in Pennsylvania and New Jersey, and the parties reside in Pennsylvania, New Jersey, South Carolina, and Minnesota, the third factor is neutral as well. Lastly, there is no indication that witnesses, or books and records would be unavailable if this case were to proceed in the Southern District of New York. Where the forum selection clause and the traditional Section 1404(a) analysis "point to the same forum, . . . the court should allow the case to proceed in that forum, . . . and the transfer inquiry ends there." *In re Howmedica*, 867 F.3d at 404. Thus, under Section 1404(a), the claims against the Terminal Defendants may be transferred as well.

## IV.     CONCLUSION

For the foregoing reasons, this Court will transfer this case to the United States District Court for the Southern District of New York. An appropriate order follows.